## William Van Sickle v. The People.

*Informations : Separate counts : Distinct offenses : Single transaction : Joinder : Election.* The joinder as separate counts in one information, of several offenses which, though distinct in point of law, yet spring out of substantially the same transaction,—as the forgery (1) of a mortgage, (2) of the certificate of acknowledgment thereof, and (3) of the accompanying bond, and likewise the uttering of each,—cannot operate to the legal prejudice of the accused ; and he is not entitled as matter of right in such case to compel an election.

*Informations : Several charges : General verdict : Practice.* Under such an information where the people go to the jury on all the charges, a general verdict of guilty convicts of the forgery as well as the uttering, and authorizes the defendant to complain of erroneous rulings against his objection as to either.

*Forgery : Sunday : Evidence.* Upon a charge of making and uttering a forged mortgage and certificate of acknowledgment on the 13th, the fact that the certificate, when produced, is dated the 14th, which is Sunday, will not preclude its reception as evidence upon the objection that by purporting to have been made on Sunday it was on its face invalid for that reason, and hence incapable of being made the basis of a prosecution for forgery.

*Handwriting : Comparison : Basis : Evidence.* The use of a diary taken from a prisoner, upon proof of admissions merely that it belonged to him, and in the absence of any showing or admission that the writing in it was his, as a basis for comparison of handwriting to prove the forgery of other instruments, is erroneous.

*Heard January 16. Decided January 29.*

Error to Washtenaw Circuit.

*A. E. Hawes, J. Logan Chipman, James S. Dewey,* and *O. Hawkins,* for plaintiff in error.

*Byron D. Ball, Attorney General,* for the People.

GRAVES, CH. J.

This is a writ of error to the circuit court for the county of Washtenaw.

The plaintiff in error was charged in distinct counts,— *first,* with having forged a mortgage ; *second,* with having uttered it ; *third,* with having forged the certificate of acknowledgment; *fourth,* with having uttered that also ; *fifth,* with having forged a bond ; and, *sixth,* with having uttered that likewise.

The information charged that the certificate of acknowledgment alleged to be forged was endorsed on the forged mortgage. The averments and the descriptions of the different instruments imported that the papers alleged to be false were prepared and adapted to be accepted by those coming to handle them as belonging to a single transaction, and as constituting a finished bond and mortgage connected together, and framed and arranged to secure one debt.

The plaintiff in error having pleaded not guilty, a jury was impanelled to try the issue, and thereupon his counsel moved the court to require the people to elect upon which count the prosecution would proceed. The motion was refused, and the first objection arises on this ruling.

The charges directed to the mortgage and certificate of acknowledgment not only pointed to one and the same transaction, but eventually and substantially to *one document*. It is true that for many purposes the mortgage and certificate of acknowledgment are subject to be considered as separate things, and it is also true that the counterfeiting of either would amount to a distinct forgery. But the certificate of acknowledgment after all is an adjunct of the mortgage and one made necessary to perfect the security for record and to fit it to accomplish certain purposes. By itself, and when wholly disconnected from, and irrelated to another instrument, a certificate of acknowledgment has no legal significance whatever. It is only by being an incident to some thing else which is the principal matter, that it acquires any legal sense. When the certificate is connected with the principal instrument it has influence. This influence, however, is upon the character of the mortgage or other principal instrument, the beneficial operations or legal value of which may depend wholly upon whether there be annexed a certificate of acknowledgment or not. Indeed, to some purposes and intents the certificate is to be regarded as part of the instrument acknowledged. This close connection between the mortgage and

certificate of acknowledgment was sufficient to justify the court in refusing to require an election among the counts directed to those papers.

In respect to the counts relating to the bond, the point is not quite so clear.    But the facts, I think, bring the question on this branch of the case within the doctrine stated in *McKinney's case, 10 Mich., 54, 95.*    At the page last mentioned the court say, that "where the several offenses charged, though distinct in point of law, yet spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction, or connected series of facts, the defendant cannot be prejudiced in his defense by the joinder, and the court will neither quash nor compel an election." We cannot say, therefore, the court below erred on this subject.

The prosecution offered in evidence the alleged forged certificate of acknowledgment.    The date named in it was the 14th of January, admitted to have been Sunday.    The plaintiff in error objected to its admission, but the court received it, and it is now contended that this writing, by purporting to have been made on Sunday, was on its face invalid on that account, and hence incapable of being the basis of a prosecution for forgery.

The information charged that it was made and uttered on an earlier and legal day, namely: the 13th of January, and there was evidence tending to support the allegation and to show that the named date was false.    If the paper had been genuine and had been actually made on the 13th of January, it would not have been void by reason of being mistakenly dated as done on the succeeding Sunday. The actual existence of it before the 14th of January would have been conclusive evidence that the written date was incorrect, and every person seeing it before the arrival of the time expressed as the date must have known that in truth it was not given on that day.    If, then, it was made and uttered as alleged, and as the evidence tended to show,

previous to the Sunday expressed in it as the time when it was made, *it was not, when concocted and uttered,* apparently made on Sunday, and therefore not then apparently invalid as a Sunday performance. According to the averments in the information and the tendency of the evidence, the certificate was apparently of some legal efficacy and shaped to deceive and defraud. The ruling on this point appears to me unobjectionable.

The next question is more serious. As already stated, the information embraced distinct charges of forging and of uttering the several papers. The people went to the jury upon all the charges, and the verdict returned was general. The plaintiff in error was therefore convicted of the forgery as well as of the uttering, and if error was committed in admitting evidence or in charging as to either, he may ask to have it corrected.

In order to show that he forged the papers, the court admitted against his objection, a book or diary taken from him, which would seem to have contained some writing, and allowed this writing to be compared with that of the alleged counterfeited documents. Some witnesses testified that he admitted that the book belonged to him. But no evidence was given to show that the writing in the book was done by him, or even that he could write at all, and the only evidence that the papers alleged to be forged were written by him was drawn from the comparison of those papers with the writing in this book. The case was at last given to the jury upon the theory that these circumstances tended to show that he wrote the mortgage, certificate of acknowledgment and bond, and hence forged them. I think this was objectionable.

The book was introduced by the prosecution, it would seem, for no other purpose than to furnish writing to be compared with the papers alleged to be spurious. Whatever writing it contained was not acknowledged by the plaintiff in error. Neither the book nor the writing in it was in any such way connected with the case as to involve

an admission that the book itself belonged to the plaintiff in error, or that any writing in it was made by him. The prosecution assumed, and the court also, that upon evidence tending to show that the book belonged to the plaintiff in error, it was competent to find that he owned it, and then to infer that he could write, and that the writing in it was his. That the book was not properly admissible for the purpose for which it was introduced, so long as it was a disputed paper not belonging to the cause, appears to be settled by the opinion given by this court in *Vinton v. Peck*, *14 Mich.*, *287, 293, 294.*

But beyond this particular ground of objection, it appears to me that the case is at fault. The circumstance, if such was the truth, that the plaintiff in error owned the book and claimed it as his, might have helped to show, and with other evidence might have sufficed to show, that the writing in it was actually made by him; but standing alone and by itself it was inadequate to show that fact. It is certainly possible that he wrote the matter contained in the diary, but the probability that he did so is not sufficiently assured by evidence of his ownership, to warrant the assumption which was made. It would, I think, be a very unsafe rule to hold that the possession and ownership of a book or document may authorize an inference that the owner can write, that he did write the matter contained in it, and then, on the foot of these inferences, charge him as the author of other and wholly disconnected writings.

For the error in this part of the case, the judgment must be reversed and a new trial ordered, and an order must be entered that the plaintiff in error be remanded to the custody of the sheriff of the county of Washtenaw.

The other questions are unimportant, or will not be likely to arise on another trial.

COOLEY and CAMPBELL, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.