## THE PEOPLE v. MELVIN DYER AND THOMAS HAYES.

*Criminal law—Conspiracy—Sufficiency of information—Election of counts—Evidence.*

1. An information charging respondents with forming and entering into a conspiracy for the wicked, malicious, and unlawful purpose of falsely charging the complainant with the crime of arson, and of burning a barn, locating it upon a certain 60 acres of land, and alleging the complainant's innocence of said crime is sufficient.

2. Where one count in an information charged the respondents with conspiring to falsely accuse a person of arson, and the second count, of larceny, and the whole case was originally charged as a single conspiring to make *both* charges, and the testimony all related to one transaction, or set of connected transactions, no election of counts is necessary for the respondent's protection, and none is required by law. *People v. McKinney*, 10 Mich. 50; *Van Sickle v. People*, 29 Id. 61.

Error to Shiawassee. (Newton, J.) Argued January 23, 1890. Decided February 20, 1890.

Respondents were convicted of conspiring to falsely accuse another of crime. Conviction affirmed. The facts are stated in the opinion.

*Turner & Turner,* for respondents.

*S. V. R. Trowbridge,* Attorney General, and *S. S. Miner,* Prosecuting Attorney, for the people.

CAMPBELL, J. Respondents were charged, together with Dennis Hyde and David D. Whitsell, and another person, unknown, with conspiring to falsely accuse John Luckhurst with crime. The information, in different counts, included false charges of arson and larceny. The original complaint before a magistrate described a single conspiracy, covering both offenses; and respondents were held to answer such a conspiracy. The testimony also was put in in the same way. But before the charge was given the people elected to rely only on the conspiracy to accuse of arson. The court directed an acquittal as against Dennis Hyde; and Whitsell, under the rule laid down by the judge, was also acquitted. Dyer and Hayes were convicted, and bring the case up for review.

It is claimed that the information charges no offense.[1] But a conspiracy is a common-law offense, and, as such, comes within our laws; and arson is also a common-law offense, as well as larceny. A conspiracy to falsely charge any one with any crime is one of the best known conspiracies at common law. The false charge is the unlawful purpose intended, and it is enough to allege it, inasmuch as the particular methods for bringing about the injurious result can seldom be fixed in advance. Our statutes have not required any allegation of particular overt acts, but when the conspiracy is shown the case

---

[1] See head-note 1, for charge in first count of information.

is made out. Such is the common-law rule, which we have not changed, and the form is good at common law. Archb. Crim. Pl. 615; *People v. Richards,* 1 Mich. 216; *People v. Saunders,* 25 Id. 119; *People v. Clark,* 10 Id. 310; *People v. Winslow,* 39 Id. 505; *People v. Arnold,* 46 Id. 268 (9 N. W. Rep. 406).

It is also claimed that the court erred in not requiring the prosecution to elect, in the beginning of the trial, under which count to proceed. There is no force in this. The whole case was charged originally as a single conspiring to make several false charges; and the testimony all related to one transaction, or set of connected transactions. In such a case, no election is necessary for respondent's protection, and none is required by law. *People v. McKinney,* 10 Mich. 54; *Van Sickle v. People,* 29 Id. 61.

The third assignment relates to a question, the answer to which was not given in the record. It seems, however, to have related to statements of Whitsell relevant to the conduct which was part of the alleged conspiracy, and so pertinent to the issue. The fourth refers to what was an argument on the admission of testimony, and not beyond what might be allowed as such. The fifth relates to hearsay in statements of one of the accused in his own favor. The remaining testimony objected to was not irrelevant. The assignments of error that the court refused to give the third, fourth, and fifth requests are not well founded. They were given, and Whitsell, to whom two of them relate, was acquitted.

The only question remaining is whether there was any case made to go to the jury against Dyer and Hayes. The barn burned, out of which this controversy arose, belonged to the possession of Dyer and Hayes. They employed Whitsell and one Norton to disguise themselves

as tramps, and to claim they had been maltreated by Dyer, and, under that pretense, to represent their disposition to injure his property, and steal a part of it. They claim that the object of these persons was to entrap Luckhurst into displaying his spite towards Dyer and Hayes, with a view of finding out, if possible, whether he had anything to do with burning the barn. During the playing of this farce, the respondents went through the pretense of having a horse stolen, which was by their procurement removed and concealed, and then got back. The detectives, as they claim, made up their minds that there was no case against Luckhurst. The question is whether respondents maliciously meant to fix a false charge against Luckhurst, and to have him arrested on it. If they knew or believed that Luckhurst had nothing to do with burning the barn, there could be very little doubt that their purpose was malicious in procuring Whitsell's action, and that they meant to get Luckhurst prosecuted. The record does not show anything tending to connect Luckhurst with the burning; and there is little, if anything, bearing on any ground of suspicion or actual suspicion of it. There was testimony which, if believed, indicated that respondents knew better. If they did, there was clearly enough to indicate that they resorted to the peculiar methods used for the purpose of getting a chance to have him arrested. Whitsell was not employed in the ordinary way, as an officer of the law, to follow his own proper course; but respondents concerted with him the scandalous methods which were resorted to, which it is hard to believe any reputable officer would have devised. The jury had ample ground for supposing respondents were anxious that Luckhurst should be found liable to arrest, if any plausible pretext could be discovered; and Whitsell's methods were not aimed at getting at the facts of the burning, so

much as at getting proofs of general ill will.  The fact that Whitsell was acquitted releases him from further prosecution, but has no tendency to show that respondents did not mean to have Luckhurst accused.  The circumstances were for the jury, who have found respondents guilty.  Tho court below thought there were enough facts for the jury to pass on, and we do not think there were not.  Their force, as persuasive of guilt, is not for us to consider.  The court and jury saw all the witnesses, and their manner of testifying may have had something to do in weighing their relative credibility.  We have nothing but the record to go by, and we think it contains enough to show that there were facts to go to the jury.  The acquittal of Whitsell shows that the case must have been considered by the jury with some deliberation, and that they understood the charge.

The conviction should be affirmed.

The other Justices concurred.