MANUEL v DEPARTMENT OF CORRECTIONS

Docket No. 79776. Submitted October 10, 1984, at Lansing.—Decided January 23, 1985. Leave to appeal applied for.

Thomas A. Manuel was convicted of first-degree murder following a jury trial in Ingham Circuit Court, Ray C. Hotchkiss, J. On the following day he pled guilty to a supplemental information charging him as a fourth-offense habitual offender. The trial court imposed a sentence of life imprisonment without eligibility for parole on the first-degree murder charge and a sentence of life imprisonment on the habitual offender charge and ordered the two sentences to run concurrently. Manuel appealed. The Court of Appeals, in an unpublished opinion, reversed the trial court's imposition of separate concurrent sentences, holding that Manuel could be sentenced to only one term of imprisonment on the underlying felony in the supplemental information and ordering that "one of defendant's two concurrent sentences be and hereby is vacated". Docket No. 43697, decided August 20, 1980. The Court of Appeals did not specify which of the two concurrent sentences should be vacated. Manuel thereafter brought in the Court of Appeals an original action for mandamus against the Department of Corrections, seeking an order requiring the department to remove from his record the sentence of life imprisonment without eligibility for parole imposed pursuant to the first-degree murder statute. *Held:*

Since under the life sentence imposed pursuant to the habitual offender statute Manuel might be eligible for parole, and since it is the clear intent of the Legislature that habitual offender provisions should operate so as to provide that sentences of habitual offenders are at least as severe, and in most cases more severe, than the sentence for the underlying felony, vacating the original mandatory sentence of life imprisonment without eligibility for parole in favor of the life sentence

REFERENCES FOR POINTS IN HEADNOTE

21 Am Jur 2d, Criminal Law § 630.

40 Am Jur 2d, Homicide § 2.

Validity of statutes prohibiting or restricting parole, probation, or suspension of sentence in case of violent crimes. 100 ALR3d 431.

entered pursuant to the habitual offender statute would fail to give effect to the Legislature's clear intent. Accordingly, the sentence entered pursuant to the provisions of the habitual offender statute is vacated, while the original mandatory sentence of life imprisonment without eligibility for parole entered pursuant to the first-degree murder statute remains in effect.

CRIMINAL LAW — SENTENCING — FIRST-DEGREE MURDER — HABITUAL OFFENDERS.

It is the intent of the Legislature that one convicted of murder in the first degree be sentenced to life imprisonment without eligibility for parole irrespective of whether the person so convicted is subsequently determined to be an habitual offender.

Thomas A. Manuel, *in propria persona,* for plaintiff.

Before: CYNAR, P.J., and BEASLEY and SHEPHERD, JJ.

PER CURIAM. Plaintiff seeks mandamus to compel the Department of Corrections to remove from his record one of two ostensibly concurrent life sentences in accordance with the mandate of this Court's determination in plaintiff's previous appeal of right of his underlying criminal convictions. In lieu of issuing an order to show cause, this Court resolves this matter through this per curiam opinion. GCR 1963, 816.2(2)(g); *People v Giacalone,* 16 Mich App 352; 167 NW2d 871 (1969).

Following trial by jury, plaintiff was convicted of first-degree murder in the Ingham County Circuit Court in 1978. The following day, plaintiff pled guilty to a supplemental information charging him as an habitual offender. The circuit court sentenced plaintiff to life imprisonment on both charges. By virtue of the Code of Criminal Procedure, however, parole is not available to one serving a life sentence for murder in the first degree. MCL 791.234; MSA 28.2304.

The sentencing judge, however, felt that the life sentence as an habitual offender would eventually come within the jurisdiction of the parole board. Despite the fact that habitual offenders do not accrue good-time credits, regular or special, *People ex rel Oakland Prosecuting Attorney v Bureau of Pardons & Paroles,* 78 Mich App 111; 259 NW2d 385 (1977), and notwithstanding the direction in the habitual offender provisions of the Code of Criminal Procedure to the effect that offenders so sentenced, other than for major controlled substance offenses, "shall not be eligible for parole before the expiration of the minimum term fixed by the sentencing judge at the time of sentence", MCL 769.12(3); MSA 28.1084(3), one convicted as an habitual offender and sentenced to life imprisonment might nonetheless be eligible for parole after the expiration of ten calendar years. *People v Waterman,* 137 Mich App 429; 358 NW2d 602 (1984).

On plaintiff's appeal of right, this Court, in an unpublished memorandum opinion, Docket No. 43697, decided August 20, 1980, citing *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), held that plaintiff could be sentenced to only one term of imprisonment on the underlying felony in the supplemental information. It was therefore ordered that "one of defendant's two concurrent life sentences be and hereby is vacated". No specification as to which of the two "concurrent" life sentences was vacated was contained in this Court's prior decision.

Ordinarily, the sentence as an habitual offender subsumes the underlying sentence, which is therefore vacated, since the sentence under the habitual offender statute is traditionally as long or longer than the sentence for the underlying felony, and even when equal is generally more severe because of the inability to accrue credits for regular or

special good time, *Oakland County Prosecuting Attorney v Bureau of Pardons & Paroles, supra.*

In the present circumstances, however, following this pattern would lead to an anomalous result. One convicted of first-degree murder, who, by legislative mandate, should be imprisoned for life without parole or until granted a reprieve, commutation, or pardon by the Governor, becomes potentially eligible for parole at the expiration of ten calendar years. Yet the purpose of the habitual offender statute is to augment the punishment for second or subsequent felonies, People v Shotwell, 352 Mich 42, 46; 88 NW2d 313 (1958), not mitigate it. Vacating the sentence on the "underlying" felony, where the underlying felony is murder in the first degree, or any other nonparoleable offense, would thus violate the cardinal rule of statutory construction, which is the effectuation of legislative intent. *People v Pettway,* 94 Mich App 812, 817; 290 NW2d 77 (1980), *lv den* 411 Mich 1083 (1981).

Moreover, this would also mean that the filing of an habitual offender information in a case of first-degree murder or intentional use of explosives causing injury to any person, MCL 750.207; MSA 28.404, for example, would circumvent the Governor's exclusive power of pardon, commutation, and reprieve. Const 1963, art 5, § 14; *People v Freleigh,* 334 Mich 306; 54 NW2d 599 (1952). Manifestly, this was not the intent of the Legislature when it enacted the habitual offender statute.

Therefore, we conclude that, in order to effectuate the intent of the Legislature and yet avoid the imposition of unconstitutional double punishment for a single offense, *Fountain, supra,* plaintiff's sentence as an habitual offender should be va-

cated, while his nonparoleable sentence for murder in the first degree remains in effect and is in no way vitiated or affected by this decision.

It is so ordered.